STEVEN G. KALAR
Federal Public Defender
Northern District of California
SEVERA KEITH
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:         Severa_Keith@fd.org


Counsel for Defendant Williams


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYRONE  WILLIAMS,<br><br>Defendant. | **Case No.:** CR 18–00224 SI<br><br>**DEFENDANT TYRONE WILLIAMS' MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**<br><br>**Court:**               Courtroom 1, 17th  Floor<br>**Hearing Date:**   November 6, 2020<br>**Hearing Time:**   11:00 a.m. |

## INTRODUCTION

Tyrone Williams successfully completed his 66-month custodial sentence, including participation in the RDAP program.  He was released on supervision on January 31, 2018, and his supervision was transferred to this district on May 30, 2018.  He has completed 32 months of his 48-month term of supervised release.  He now seeks to terminate his supervised release early.  At the time of filing, the United States Probation Office has taken no position on this motion.  AUSA O'Brien will file a brief in response to this motion.

As discussed more thoroughly below, the two relevant factors the Court must consider are "the conduct of the defendant" and "the interest of justice."  18 U.S.C. § 3583(e)(1).  Both of those factors

1  support terminating Mr. Williams from supervised release early.  Accordingly, for the reasons detailed
2  below, the Court should grant this motion.

3  **STATEMENT OF FACTS**

4  In 2014, Mr. Williams was charged in Count Eight and Count Nine of a twelve-count, multi-
5  defendant indictment, filed March 13, 2014, in the Western District of Tennessee (Exhibit A, March 13,
6  2014 Filed Indictment in CR No. 14-20068 JPM). Mr. Williams was arrested in Oakland, California on
7  March 20, 2014 (Exhibit B, Arrest Warrant). United States Magistrate Judge in the Western District of
8  Tennessee ordered him detained pending trial, on April 9, 2014 (Exhibit C, Order of Detention Pending
9  Trial).   On October 30, 2014, Mr. Williams entered into a plea agreement with the United States
10 Attorney. Mr. Williams entered a plea of guilty to Count Nine of the indictment, charging him with
11 conspiracy to possess with intent to distribute marijuana, a violation of 21 U.S.C. § 841(a)(1), 846 &
12 841(b)(1)(B), and he admitted that the relevant conduct associated with this crime was 80 to 100 kg of
13 marijuana (Exhibit D, Plea Agreement).

14 The conviction in Tennessee was one of several encounters with law enforcement, all of which
15 were intrinsically related to Mr. Williams' prior drug addiction. However, Mr. Williams has
16 demonstrated in numerous ways that he has transformed himself to become a productive and contributing
17 member of the community.

18 At sentencing, Mr. Williams was sentenced to 66 months imprisonment, with the condition that
19 he participate in the RDAP program, and to four years of supervised release.  In addition to the standard
20 conditions of supervised release, the court also imposed the following conditions: that he not possess
21 firearms, ammunition, or other dangerous weapons; that he provide a DNA sample; that he submit to
22 drug testing and treatment programs as directed by the probation officer; that he participate in vocational
23 training as directed by the probation officer; and that he participate in moral recognition therapy (MRT)
24 as directed by the probation officer (Exhibit E, U.S. District Court Judgment).

25 While in custody, Mr. Williams successfully completed RDAP.  As soon as he was released from
26 prison, he remained actively committed to his rehabilitation, ensuring that he would not reoffend.  While
27 residing in the halfway house, he participated in a drug treatment program and counseling.  He also
28 worked while living at the halfway house.  After earning a Class A driver's license, (Exhibit F, California

Commercial Driver License) he worked for Bin Pull LLC, where he continues to work part-time, (Exhibit G, Personal Earning Statements) and JB Hauling.  After that, he took a job at LS Trucking for about one year to get more experience.  Then, he worked for Waste Management.  After that, he got his own truck, and he and his fiancée started their own business, incorporating Best Way Transportation in 2018 (Exhibit H, Articles of Incorporation for Best Way Transportation Inc.).  Best Way Transportation provides services on construction sites, hauling away dirt and debris.  Mr. Williams and his wife have successfully grown the company for the past two years.  The termination of supervised release would benefit their business, as it would make it easier for Mr. Williams to take jobs out of this district.  Mr. Williams has attended counseling as directed, has consistently tested free from drugs, has maintained steady employment, and paid the $100 special assessment.  He has been in full compliance with the terms of his supervised release, and he has committed no violations.

Additionally, his family's well-being is hindered by Mr. Williams' inability to obtain life insurance, because being on supervised release puts him in a high-risk category.  He has applied many times and spoken to many insurance agents.  "Every other one I applied for said the same thing or only wanted to offer term life, which I'm not comfortable with. I applied for multiple reasons: 1. I have children. 2. I'm a truck driver and it's considered to be one of the most dangerous jobs. 3. I'm getting older, and the older you are the more expensive it gets. 4. I need to make sure my family is taken care of in the event something tragic happens to me."

Mr. Williams and his fiancée are raising their son, aged seven, and their baby daughter, in addition to running their business.  Mr. Williams is a dedicated father, who actively takes part in his children's lives, and he takes great pride in providing his children with a loving and stable home. He knows that he is an important role model for his children, and this is his greatest motivation to succeed (Exhibit I, Letter to Judge Illston by Tyrone Williams).

 Not only is Mr. Williams making a change with his own family, he is involved with the Oakland Rebels Youth Basketball Club, volunteering an average of 6 to 15 hours per week.  In this capacity, he mentors youth in the community to reach their potential.

Tyrone strives to enrich his community on a daily basis as he frequently devotes his spare time to help our young thrive. Always finding ways to advocate for youth, constantly encouraging players to work hard, and always remaining optimistic even in the face of a challenge is what makes

Tyrone unique. Most of all, Tyrone has helped the rest of our volunteers create a culture that says being a leader off the court and in the classroom matters more than being a leader on the court. Tyrone has been influential in organizing mentorship programs and most importantly advocating and supporting the success of the youth in the community.

(Exhibit J, March 17, 2020, Letter of Support by Melvin Landry, Founder and Commissioner of the Oakland Rebels Youth Basketball Club)  Since his term of supervised release began in January 2018, Mr. Williams has been completely compliant, and the turnaround in his life is nothing short of remarkable.  Under the circumstances, both Mr. Williams' conduct and the interests of justice clearly dictate that Mr. Williams merits early termination of supervised release.

## ARGUMENT

After considering some of the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense and the history and characteristics of a defendant, a court may terminate supervised release after one year if such action is warranted "*by the conduct of the defendant* released and the *interest of justice*."  18 U.S.C. § 3583(e)(1) (emphasis added).  The "expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination."  *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014).

As the Ninth Circuit explained in *Emmett*, section 3583 "does not support a legal standard that categorically requires a petitioner to demonstrate an undue hardship. District courts are directed to exercise discretion in light of a broad range of factors, and therefore a blanket rule denying early termination whenever a defendant fails to prove undue hardship would completely disregard the statute." 749 F.3d at 819 (quotations and citations omitted).

**I.     The Interests of Justice Support Early Termination**

The interests of justice support early termination not only because of Mr. Williams's exemplary performance, but also because judicial policy supports early termination for individuals like Mr. Williams.

In determining whether someone is an appropriate candidate for early termination, the Committee on Criminal Law of the Judicial Conference of the United States has concluded that: "Terminating appropriate cases before they reach their full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism."  (Exhibit K at 2, Committee on Criminal

Law of the Judicial Conference of the United States, February 16, 2012, Memorandum re Cost-Containment Strategies Related to Probation and Pretrial Services Offices).

The Guide to Judiciary Policy governing Supervision of Federal Offenders, commonly known as Monograph 109, specifically instructs that: "[Probation] Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible." (Exhibit L, Guide to Judiciary Policy Governing Supervision of Federal Offender, Vol. 8, Part E, § 380.10(b)). In other words, the probation office is instructed to begin considering the suitability of termination for every supervisee as soon as possible. Mr. Williams commenced supervision in January 2018, thirty-two months ago. Further, after a period of eighteen months of supervision, "there is a presumption in favor of recommending early termination for probationers and supervisees" who are not violent offenders, pose no risk to the public, and are free from serious violations. *Id*. at §380.10(e)(1).

The Administrative Office of the U.S. Courts ("AO") has also given guidance as to when supervisees may be terminated from supervision. *See* (Exhibit M, May 12, 2009 Letter from Administrative Office of the U.S. Courts Assistant General Counsel Joe Gergits to Ms. Ellie N. Hayase Asasaki, United States Probation Officer, District of Hawaii). Even before the Ninth Circuit's decision in *Emmett*, the AO emphasized that an offender need not have successfully complied with all conditions of supervision in order to be eligible for termination, nor must he demonstrate "exceptional conduct" to justify early termination. *Id*. at 2, 3. To the contrary, "Courts have discretion under § 3583(e)(1) to discontinue supervision after one year if any combination of the specified factors in § 3553(a) and § 3583(e) justifies early termination." *Id*. at 3. Pursuant to the statute, "a court must simply be satisfied that the termination is warranted and is in the interest of justice." *Id*.

The Administrative Office, Judicial Conference and Monograph 109 all endorse the same nine criteria to be considered in early termination of supervised release determinations. Those criteria are, specifically:

(1) Stable community reintegration (e.g., residence, family, employment);

(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;

(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

(4) No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

1  (5) No recent arrests or convictions (including unresolved pending charges) or ongoing,
2  uninterrupted patterns of criminal conduct;

   (6) No recent evidence of alcohol or drug abuse;
3
   (7) No recent psychiatric episodes;
4
   (8) No identifiable risk to the safety of any identifiable victim; and
5
   (9) No identifiable risk to public safety based on the Risk Prediction Index.

6  Exhibit K at 8; Exhibit L at § 380.10; Exhibit M at 3.

7      Mr. Williams clearly satisfies eight of nine criteria used by officers to determine whether an

8  individual is an appropriate candidate for early termination.  The only allegations of violence made

9  against him were in 2004.  His ex-girlfriend accused him of assault and breaking a window, and the

10  charges were ultimately dismissed.  Given the age of the incident, the fact that it did not result in a

11  conviction, and abundant evidence that Mr. Williams is a different man today, it should not factor heavily

12  in the Court's decision.  Mr. Williams is working, stable, sober, and has reintegrated into the community

13  as a contributing member.  He is not a danger to anyone.  To the contrary, he provides love and support

14  to his family and the youth of Oakland.

15      Notably, the text of § 3583(e)(1) does not support a legal standard that requires a petitioner to

16  demonstrate new, changed or "extraordinary circumstances."  *See United States v. Andrea Nunez*, CR

17  14-00300 JST, Doc. 12, Order Granting Motion for Early Termination of Supervised Release, at 2 (N.D.

18  Cal. Apr. 17, 2015) (granting early termination motion over the objection of the probation office and

19  holding that extraordinary circumstances are not required for early termination under § 3583(e)(1)); *see*

20  *also United States v. Bainbridge*, 746 F.3d 943, 948-49 (9th Cir. 2014) (holding that a change in

21  circumstances is not necessary for a district court to modify a condition of supervised release under §

22  3583(e)(2)).  An inflexible rule requiring a defendant to prove these additional factors would be contrary

23  to the plain language of the statutes.  Mr. Williams recognizes that because the Court has broad discretion

24  to assesses his motion under 18 U.S.C. § 3583(e)(1), the Court may consider factors like these in

25  weighing his "conduct" on release (§ 3583(e)(1)) or in assessing his "history and characteristics" (§

26  3553(a)(1)).  However, these are not necessary preconditions that he must prove to earn early

27  termination.

28      Further, mere compliance with the terms of one's supervision may be sufficient to terminate

supervised release early given the totality of the circumstances in a particular case. *See United States v. Alexander*, CR 18-00520 SI, Doc. 11 (N.D. Cal. Jun. 25, 2020) (granting early termination for a defendant similarly situated to Mr. Williams, based on "the progress he has made in addressing his substance abuse issues and in securing and maintaining employment")*; see also United States v. Copeland*, CR 02-00316 WHA, 2014 WL 1620947, at *1 (N.D. Cal. Apr. 22, 2014) (granting early termination for a defendant who complied with all terms of supervised release); *see also United States v. King*, 551 F. Supp. 2d 1298, 1300 (D. Utah 2008) (terminating supervised release early because the defendant had "been cooperative with the Probation Office and ha[d] fully complied with the conditions of his release."); *United States v. Gainer*, 936 F. Supp. 785, 786-87 (D. Kansas 1996) (terminating defendant's supervised release early because defendant's "overall adjustment to supervision was good" and "he reported in a timely manner while maintaining full-time employment . . . "); *United States v. John Carter*, CR 03-00695 AHM, Doc. 117, at 4-5 (C.D. Cal. Jan. 26, 2015) (King, C.J.) (giving "defendant's record of compliance great weight [in early termination of supervised release] determination because defendant has complied with every condition for nearly four years.").[1] Thus, the interests of justice support Mr. Williams's request for early termination of supervised release.

## II.    Mr. Williams's Conduct Supports Early Termination

Whether Mr. Williams's conduct warrants early termination of supervised release must be assessed by looking at some of the § 3553(a) factors. *See* 18 U.S.C. § 3583(e)(1) (court to consider all § 3553(a) factors except § 3553(a)(2)(A) and § 3553(a)(3)).

Regarding the "nature and circumstances of the offense," § 3553(a)(1), Mr. Williams was sentenced to 66 months of custody for his conviction for drug trafficking. He accepted responsibility

---

[1] Many courts in this district have granted early termination without issuing a lengthy written order, and in some cases, the parties agreed that termination was appropriate based on a defendant's full compliance with supervision. *See, e.g.*, *United States v. Ruben Reynosa*, CR 98-00100-2 SI, Doc. 141 (N.D. Cal. Feb. 29, 2016) (granting joint stipulation for early termination – with agreement of probation office – where defendant owed outstanding restitution but was in compliance with all conditions of his supervised release); *United States v. Yeurra Blaylock,* CR 12-00071 RS, Doc. 7 (N.D. Cal. Dec. 7, 2015) (granting unopposed motion for early termination); *United States v. Tammy Thomas,* CR 06-00803 SI, Document 227 (N.D. Cal. Dec. 14, 2012) (same); *cf. United States v. Antoinette Markoff*, CR 07-00545 EMC, Doc. 15 (N.D. Cal. Apr. 24, 2014) (granting early termination motion over government objection); *United States v. Trisha Roche*, CR 11-00384-1 PJH, Doc. 51 (N.D. Cal. Nov. 19, 2015) (same); *United States v. Patrick Kenny*, CR 05-00079 WHA, Doc. 71 (N.D. Cal. Dec. 11, 2012) (same).

and pled guilty.  Mr. Williams was not a leader of the enterprise; he was a supplier of marijuana.

The history and characteristics of Mr. Williams also support early termination.  *See* 18 U.S.C. § 3553(a)(1).  Mr. Williams and his fiancée have created a stable, loving family environment for their two children.  He has been a wonderful father to his children, focused on giving them love and direction so that they succeed in life.  He has achieved the extraordinary success of starting and growing his own business.  This took a level of commitment that indicates his ability to achieve positive goals.  Moreover, despite the time and effort it takes to run a business and raise his family, he still gives many hours per week to his community by volunteering with youth, thereby providing them a positive role model.  He did all this without any violations of supervised release.  By any measure, Mr. Williams has been a model supervisee and early termination of his supervision is warranted by his conduct.  Moreover, continued supervision is not a good use of government funds.  Such funds should be directed towards those who need greater supervision and who are a greater risk of recidivism. (Exhibit. K at 2)

## CONCLUSION

Mr. Williams has a stable family and home life, a good job, and his rehabilitation is manifest.  His performance on supervised release has been exemplary.  Terminating supervision will benefit his career, his family, and his finances, because it will open up opportunities that are currently out of reach.  Under these circumstances, termination of supervision will provide greater stability to Mr. Williams, not less.  He no longer requires supervision to stay on the good path.  Early termination of supervised release is appropriate in this case.  Accordingly, Mr. Williams respectfully asks this Court to grant his motion and terminate supervised release.

Dated:   October 9, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
SEVERA KEITH
Assistant Federal Public Defender