*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT A

# WHITMORE

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CR. No. _14-20068-SHM_ |
| | ) |
| v. | ) |
| | ) 21 U.S.C. § 841(a)(1) |
| | ) 21 U.S.C. § 846 |
| MARLON DESHONE QUARLES, | ) |
| a/k/a "Marlon Patterson," | ) |
| SAUL WILLIAMS, | ) |
| a/k/a "Jabo," | ) |
| VICTOR QUARLES, | ) |
| a/k/a "Vic," | ) |
| TYRONE WILLIAMS, | ) |
| a/k/a "Ty," | ) |
| BRANDON POWELL, | ) |
| ZACK PATTERSON, | ) |
| WALTER ECHOLS, | ) |
| MAURICE WOODARD, | ) |
| CHRISTOPHER MUNN, | ) |
| TROY STEPHENSON, | ) |
| ANTONIO HUMPHRIES, | ) |
| BOBBY GRIFFIN, | ) |
| a/k/a "Unc," | ) |
| JACQUELINE CHAMBERS, | ) |
| a/k/a "Jackie," | ) |
| MICHELLE CARLSON, | ) |
| JASMINE KING, | ) |
| KIARA WRIGHT, | ) |
| LATEISHA BOBO, | ) |
| and | ) |
| MANIKA SHELBY, | ) |
| | ) |
| Defendants. | ) |

## <u>I N D I C T M E N T</u>

**THE GRAND JURY CHARGES:**

## <u>COUNT 1</u>

Beginning at a time unknown to the Grand Jury, but at least from in or about

September 2011, continuing through at least February 2013, in the Western District of

Tennessee and elsewhere, the defendants,

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson,"**
**SAUL WILLIAMS,**
**a/k/a "Jabo,"**
**VICTOR QUARLES,**
**a/k/a "Vic,"**
**BRANDON POWELL,**
**ZACK PATTERSON,**
**WALTER ECHOLS,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**TROY STEPHENSON,**
**ANTONIO HUMPHRIES,**
**BOBBY GRIFFIN,**
**a/k/a/ "Unc,"**
**MICHELLE CARLSON,**
**JASMINE KING,**
**KIARA WRIGHT,**
**LATEISHA BOBO,**
**and**
**MANIKA SHELBY,**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree

with each other and other persons both known and unknown to the Grand Jury, to

possess with the intent to distribute and to distribute oxycodone (a/k/a "Oxycontin"), a

Schedule II controlled substance as classified by the Title 21, United States Code,

Section 812, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21,

United States Code, Section 846.

## COUNT 2

Beginning at a time unknown to the Grand Jury, but at least from in or about September 2011, continuing through at least February 2013, in the Western District of Tennessee and elsewhere, the defendants,

**MARLON DESHONE QUARLES,
a/k/a "Marlon Patterson,"
SAUL WILLIAMS,
a/k/a "Jabo,"
VICTOR QUARLES,
a/k/a "Vic,"
BRANDON POWELL,
ZACK PATTERSON,
WALTER ECHOLS,
MAURICE WOODARD,
CHRISTOPHER MUNN,
TROY STEPHENSON,
ANTONIO HUMPHRIES,
BOBBY GRIFFIN,
a/k/a "Unc,"
MICHELLE CARLSON,
JASMINE KING,
KIARA WRIGHT,
LATEISHA BOBO,
and
MANIKA SHELBY,**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and other persons both known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute morphine, a Schedule II controlled substance as classified by the Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846.

3

## **COUNT 3**

Beginning at a time unknown to the Grand Jury, but at least from in or about

September 2011, continuing through at least February 2013, in the Western District of

Tennessee and elsewhere, the defendants,

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson,"**
**SAUL WILLIAMS,**
**a/k/a "Jabo,"**
**VICTOR QUARLES,**
**a/k/a "Vic,"**
**BRANDON POWELL,**
**ZACK PATTERSON,**
**WALTER ECHOLS,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**TROY STEPHENSON,**
**ANTONIO HUMPHRIES,**
**BOBBY GRIFFIN,**
**a/k/a "Unc,"**
**MICHELLE CARLSON,**
**JASMINE KING,**
**KIARA WRIGHT,**
**LATEISHA BOBO,**
**and**
**MANIKA SHELBY,**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree

with each other and other persons both known and unknown to the Grand Jury, to

possess with the intent to distribute and to distribute Meperidine, a Schedule II

controlled substance as classified by the Title 21, United States Code, Section 812, in

violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States

Code, Section 846.

4

## COUNT 4

Beginning at a time unknown to the Grand Jury, but at least from in or about September 2011, continuing through at least February 2013, in the Western District of Tennessee and elsewhere, the defendants,

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson,"**
**SAUL WILLIAMS,**
**a/k/a "Jabo,"**
**VICTOR QUARLES,**
**a/k/a "Vic,"**
**BRANDON POWELL,**
**ZACK PATTERSON,**
**WALTER ECHOLS,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**TROY STEPHENSON,**
**ANTONIO HUMPHRIES,**
**BOBBY GRIFFIN,**
**a/k/a "Unc,"**
**MICHELLE CARLSON,**
**JASMINE KING,**
**KIARA WRIGHT,**
**LATEISHA BOBO,**
**and**
**MANIKA SHELBY,**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and other persons both known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute hydrocodone (a/k/a "Lortab," "Lorcet," "Tussionex," "Hydromet," and "Vicodin") a Schedule III controlled substance as classified by the Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846.

## **COUNT 5**

Beginning at a time unknown to the Grand Jury, but at least from in or about

September 2011, continuing through at least February 2013, in the Western District of

Tennessee and elsewhere, the defendants,

> **MARLON DESHONE QUARLES,**
> **a/k/a "Marlon Patterson,"**
> **SAUL WILLIAMS,**
> **a/k/a "Jabo,"**
> **VICTOR QUARLES,**
> **a/k/a "Vic,"**
> **BRANDON POWELL,**
> **ZACK PATTERSON,**
> **WALTER ECHOLS,**
> **MAURICE WOODARD,**
> **CHRISTOPHER MUNN,**
> **TROY STEPHENSON,**
> **ANTONIO HUMPHRIES,**
> **BOBBY GRIFFIN,**
> **a/k/a "Unc,"**
> **MICHELLE CARLSON,**
> **JASMINE KING,**
> **KIARA WRIGHT,**
> **LATEISHA BOBO,**
> **and**
> **MANIKA SHELBY,**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree

with each other and other persons both known and unknown to the Grand Jury, to

possess with the intent to distribute and to distribute alprazolam (a/k/a "Xanax," "Xanax

bars," and  "bars"), a Schedule IV controlled substance as classified by the Title 21,

United States Code, Section 812,  in violation of Title 21, United States Code, Section

841(a)(1) and Title 21, United States Code, Section 846.

## COUNT 6

Beginning at a time unknown to the Grand Jury, but at least from in or about September 2011, continuing through at least February 2013, in the Western District of Tennessee and elsewhere, the defendants,

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson,"**
**SAUL WILLIAMS,**
**a/k/a "Jabo,"**
**VICTOR QUARLES,**
**a/k/a "Vic,"**
**BRANDON POWELL,**
**ZACK PATTERSON,**
**WALTER ECHOLS,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**TROY STEPHENSON,**
**ANTONIO HUMPHRIES,**
**BOBBY GRIFFIN,**
**a/k/a "Unc,"**
**MICHELLE CARLSON,**
**JASMINE KING,**
**KIARA WRIGHT,**
**LATEISHA BOBO,**
**and**
**MANIKA SHELBY,**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and other persons both known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute lorazepam (a/k/a "Ativan"), a Schedule IV controlled substance as classified by the Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846.

## COUNT 7

Beginning at a time unknown to the Grand Jury, but at least from in or about

September 2011, continuing through at least February 2013, in the Western District of

Tennessee and elsewhere, the defendants,

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson,"**
**SAUL WILLIAMS,**
**a/k/a "Jabo,"**
**VICTOR QUARLES,**
**a/k/a "Vic,"**
**BRANDON POWELL,**
**ZACK PATTERSON,**
**WALTER ECHOLS,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**TROY STEPHENSON,**
**ANTONIO HUMPHRIES,**
**BOBBY GRIFFIN,**
**a/k/a "Unc,"**
**MICHELLE CARLSON,**
**JASMINE KING,**
**KIARA WRIGHT,**
**LATEISHA BOBO,**
**and**
**MANIKA SHELBY,**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree

with each other and other persons both known and unknown to the Grand Jury, to

possess with the intent to distribute and to distribute Carisoprodol (a/k/a "Soma"), a

Schedule IV controlled substance as classified by the Title 21, United States Code,

Section 812, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21,

United States Code, Section 846.

8

## COUNT 8

Beginning at a time unknown to the Grand Jury, but at least from in or about July 2012, continuing through at least February 2014, in the Western District of Tennessee and elsewhere, the defendants,

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson",**
**SAUL WILLIAMS,**
**a/k/a "Jabo",**
**VICTOR QUARLES,**
**a/k/a "Vic",**
**TYRONE WILLIAMS,**
**a/k/a "Ty,"**
**BRANDON POWELL,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**and**
**JACQUELINE CHAMBERS**
**a/k/a "Jackie"**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and other persons both known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute not less than five hundred (500) grams of a mixture and substance containing a detectable amount of cocaine, a controlled substance as classified by Title 21, United States Code, Section 812 as a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846.

## COUNT 9

Beginning at a time unknown to the Grand Jury, but at least from in or about July 2012, continuing through at least February 2014, in the Western District of Tennessee and elsewhere, the defendants,

9

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson",**
**SAUL WILLIAMS,**
**a/k/a "Jabo",**
**VICTOR QUARLES,**
**a/k/a "Vic",**
**TYRONE WILLIAMS,**
**a/k/a "Ty,"**
**BRANDON POWELL,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**and**
**JACQUELINE CHAMBERS**
**a/k/a "Jackie"**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and other persons both known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute not less than one hundred (100) kilograms of a mixture and substance containing a detectable amount of marijuana, a controlled substance as classified by Title 21, United States Code, Section 812 as a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846.

## COUNT 10

On or about November 14, 2013, in the Western District of Tennessee, the defendant,

**VICTOR QUARLES,**
**a/k/a "Vic",**

did unlawfully, knowingly and intentionally possess with the intent to distribute and to distribute a mixture and substance containing a detectable amount of marijuana, a controlled substance as classified by the Title 21, United States Code, Section 812 as a

10

Schedule I controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT 11

On or about January 31, 2014, in the Western District of Tennessee, the defendant,

**VICTOR QUARLES,**
**a/k/a "Vic"**
**and**
**CHRISTOPHER MUNN**

did each aided and abetted by the other unlawfully, knowingly and intentionally possess with the intent to distribute and to distribute a mixture and substance containing a detectable amount of marijuana, a controlled substance as classified by the Title 21, United States Code, Section 812 as a Schedule I controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT 12

On or about February 28, 2014, in the Western District of Tennessee, the defendant,

**VICTOR QUARLES,**
**a/k/a "Vic"**
**and**
**CHRISTOPHER MUNN**

did each aided and abetted by the other unlawfully, knowingly and intentionally possess with the intent to distribute and to distribute a mixture and substance containing a detectable amount of marijuana, a controlled substance as classified by the Title 21,

11

United States Code, Section 812 as a Schedule I controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## CRIMINAL FORFEITURE

1.      The allegations contained in Counts 1-12 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

2.      Pursuant to Title 21, United States Code, Section 853(a)(1) and (2), the defendants,

**MARLON DESHONE QUARLES,**
**a/k/a "Marlon Patterson,"**
**SAUL WILLIAMS,**
**a/k/a "Jabo,"**
**VICTOR QUARLES,**
**a/k/a "Vic,"**
**TYRONE WILLIAMS,**
**a/k/a "Ty",**
**BRANDON POWELL,**
**ZACK PATTERSON,**
**WALTER ECHOLS,**
**MAURICE WOODARD,**
**CHRISTOPHER MUNN,**
**TROY STEPHENSON,**
**ANTONIO HUMPHRIES,**
**BOBBY GRIFFIN,**
**a/k/a "Unc,"**
**JACQUELINE CHAMBERS,**
**a/k/a "Jackie,"**
**MICHELLE CARLSON,**
**JASMINE KING,**
**KIARA WRIGHT,**
**LATEISHA BOBO,**
**and**
**MANIKA SHELBY,**

12

from their engagement in any or all of the violations alleged in Counts 1 thru 12 of this Indictment, punishable by imprisonment for more than one year, which counts are re-alleged and incorporated as if more fully set forth herein, shall forfeit to the United States all of their interest in: property constituting and derived from any proceeds the defendants obtained, directly or indirectly, as a result of such violations; and property used and intended to be used in any manner or part to commit and to facilitate the commission of such violations. Such property includes, but is not limited to, the following:

    a. Money Judgment. representing the aggregate of the proceeds of the illegal drug trafficking charged in Counts 1 thru 12, for which the defendants are jointly and severally liable;

    3.    If any of the property described above, as a result of any act or omission of the defendant[s] in Counts 1-12:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of

substitute property pursuant to Title 21, United States Code, Section

853(p).

A TRUE BILL:

_____
FOREPERSON

DATE: _____

_____
EDWARD L. STANTON III
UNITED STATES ATTORNEY

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT B

AO 442 (Rev. 01/09) Arrest Warrant

NOT REDACTED

19/00411

# UNITED STATES DISTRICT COURT

for the

Western District of Tennessee

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. *14·20068·SHM* |
| TYRONE WILLIAMS, a/k/a "Ty," | ) | |
| Defendant | ) | **2014 MAR 14 PM 12:28** |

## ARREST WARRANT

**ORIGINAL**

To:     Any authorized law enforcement officer

    **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     TYRONE WILLIAMS,  a/k/a "Ty," ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint

☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

    21 U.S.C. § 846 - conspiracy; and
    21 U.S.C. § 841(a)(1) - possession with intent to distribute a controlled substance

Date:   03/13/2014

                                                        *Issuing officer's signature*

City and state:   Memphis, Tennessee

                                                        THOMAS M. GOULD, CLERK-WDTN
                                                        *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* 3/20/14 at *(city and state)* Oakland Co . |
| Date: 4/4/14 |
| *Arresting officer's signature* |
| *Printed name and title* |

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**Western Division**

**UNITED STATES OF AMERICA**

-vs-                                                    Case No.    2:14cr20068-4-SHM

**TYRONE WILLIAMS**

## ORDER OF DETENTION PENDING TRIAL

### FINDINGS

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been

held.  The following facts and circumstances require the defendant to be detained pending trial.

The defendant makes no application for release at this time.  A motion for conditions
of release and a detention hearing may be filed at a later date.

### DIRECTIONS REGARDING DETENTION

**TYRONE  WILLIAMS** is committed to the custody of the Attorney General or his designated
representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or
serving sentences or being held in custody pending appeal  **TYRONE  WILLIAMS** shall be afforded a
reasonable opportunity for private consultation with defense counsel.  On order of a Court of the
United States or on request of an attorney for the government, the person in charge of the corrections
facility shall deliver the Defendant to the United States marshal for the purpose of an appearance
in connection with a Court proceeding

Date:    April 9, 2014                            _____s/ Tu M. Pham_____
                                                            TU M. PHAM
                                                 UNITED STATES MAGISTRATE JUDGE

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED IN OPEN COURT
DATE: 10-30-14
TIME: 9:30
INITIALS: MK

UNITED STATES OF AMERICA, )
         Plaintiff, )
                  )
vs. )
                  )
TYRONE WILLIAMS, )
         Defendant. )

Criminal No. Cr. No. 14-20068

---

## PLEA AGREEMENT

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

of America, by its attorneys, Edward L. Stanton, III, United States Attorney for the

Western District of Tennessee, and Kevin P. Whitmore, Assistant United States Attorney,

and the defendant, TYRONE WILLIAMS, and his attorney, Andre Mathis, hereby agree to

the following:

1.    Mr. WILLIAMS will enter a plea of guilty to Count Nine of the Indictment

charging conspiracy to possess with the intent to distribute marijuana, in violation of Title

21, United States Code, Section 846. Parties agree that the relevant conduct associated

with Count Nine is 80 to 100 kilograms of marijuana.

2.    Mr. WILLIAMS agrees that he is pleading guilty because he is in fact guilty

of the offense charged in Count Nine of the Indictment. Mr. WILLIAMS understands the

elements of the offense and knowing the burden of proof, Mr. WILLIAMS hereby agrees

that the government would have been able to meet its burden of proof to the count that he is pleading guilty.

3.    Mr. WILLIAMS acknowledges that the Government will recommend that he receives the full reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1.  The Government will also recommend the low end of the guidelines.

4.    Mr. WILLIAMS acknowledges that he has been advised and does fully understand the nature of the charge to which the plea is offered and the maximum possible penalties provided by law.

5.    Mr. WILLIAMS acknowledges that he has been advised and does fully understand that by pleading guilty, he is giving up the rights associated with a trial by jury.

6.    Mr. WILLIAMS acknowledges that he has been advised and does fully understand that by pleading guilty, he gives up the right to appeal the conviction.    Based on concessions made in this plea agreement by the United States, Mr. WILLIAMS also hereby waives his rights to appeal his sentence, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing.

7.    Mr. WILLIAMS agrees to pay the mandatory special assessment of $100 before sentencing.

8.    Mr. WILLIAMS has discussed the terms of the foregoing plea agreement with his attorney and is satisfied with his advice and counsel.   Additionally, this writing or document represents all the agreements between the parties, and there are no agreements that are not stated in this writing or document.

9.      Being aware of all the possible consequences of his plea, Mr. WILLIAMS

has independently decided to enter his plea of guilty on his own free will, and affirms this

agreement on the date and by his signature below.

EDWARD L. STANTON, III
United States Attorney

_____                    10/30/14
KEVIN P. WHITMORE                           _____
Assistant United States Attorney            Date

_____                    Oct 30, 2014
ANDRE MATHIS                                _____
Attorney for Defendant                      Date

_____                    10 30/14
TYRONE WILLIAMS                             _____
Defendant                                   Date

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT E

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Western District of Tennessee

UNITED STATES OF AMERICA

v.

TYRONE WILLIAMS

)
)
)
)
)
)
)
)

**JUDGMENT IN A CRIMINAL CASE**

Case Number:  2:14CR20068-04-JPM

USM Number:  19604-111

Andre B. Mathis, CJA
Defendant's Attorney

## THE DEFENDANT:

☑ pleaded guilty to count(s)    Nine (9) of the Indictment on 10/30/2014

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count(s) |
|---|---|---|---|
| 21 U.S.C. §§ 841(a)(1), | Conspiracy to Possess with Intent to Distribute and to | 2/28/2014 | 9 |
| 846 & 841(b)(1)(B) | Distribute a Controlled Substance - Marijuana | | |
| | | | |

      The defendant is sentenced as provided in pages 2 through _____5_____ of this judgment.  The sentence is imposed pursuant to
the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)   Eight (8)                    ☑ is   ☐ are  dismissed on the motion of the United States.

      It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/26/2015
Date of Imposition of Judgment

s/Jon Phipps McCalla
Signature of Judge

Jon Phipps McCalla    U.S. District Judge
Name and Title of Judge

1/28/2015
Date

AO 245B    (Rev. 09/11) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page    2    of    5

DEFENDANT:  TYRONE WILLIAMS
CASE NUMBER:  2:14CR20068-04-JPM

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

66 MONTHS

☑ The court makes the following recommendations to the Bureau of Prisons:

The defendant be incarcerated in a facility with a Residential Drug Abuse  Program (RDAP) as close to Oakland, CA as possible.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____ .

  ☐ as notified by the Clerk of Court.

  ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:  TYRONE WILLIAMS
CASE NUMBER:  2:14CR20068-04-JPM

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

     4 YEARS

       The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check, if applicable.)*

☑   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  *(Check, if applicable.)*

☑   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence.  *(Check, if applicable.)*

       If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

       The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

5)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

6)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician, and shall submit to periodic urinalysis test as directed by the probation officer to determine the use of any controlled substance;

7)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, and shall submit to periodic urinalysis test as directed by the probation officer to determine the use of any controlled substance;

8)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

9)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

10)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

11)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

12)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

13)   if this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page    4    of    5

DEFENDANT:  TYRONE WILLIAMS
CASE NUMBER:  2:14CR20068-04-JPM

## ADDITIONAL SUPERVISED RELEASE TERMS

1. The defendant shall submit to drug testing and drug treatment programs as directed by the Probation Officer.

2. The defendant shall participate in vocational training as directed by the Probation Officer.

3. The defendant shall participate in Moral Reconation Therapy (MRT) as directed by the Probation Officer.

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
          Sheet 5 — Criminal Monetary Penalties

Judgment — Page   5   of   5

DEFENDANT:  TYRONE WILLIAMS
CASE NUMBER:  2:14CR20068-04-JPM

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 |
| | (Due immediately) | | |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Address** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTALS** | $ 0.00 | | $ 0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐  the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT F



*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT G

**Bin Pull LLC**
220 4th Street, Suite 200
Oakland, CA 94607
(925) 246-7855

**Personal Earnings Statement**
MP_820 U12012046  © 2001-2040 MPH-I

M1730   100  02/03/20  1170
**Tyrone S. Williams**

| Tyrone S. Williams | | | | February 03, 2020 | | | 1170 |
|---|---|---|---|---|---|---|---|
| Emp Id | **100** | Loc | **100** | Period Begin | **01/01/20** | Net Pay | **872.39** |
| Status | **T** | Hire Date | **08/15/17** | Period End | **01/31/20** | Dir Dep | **872.39** |
| SSN | XXX-X | | | Check Type | **Reg** | | |

## Earnings Summary

**Total Gross Pay**

| | Hours | Rate | Current Amt | Ytd Amt |
|---|---|---|---|---|
| Regular | 0.00 | | 955.00 | 955.00 |
| | **0.00** | | **955.00** | **955.00** |

**Taxes**

| | Status | Taxable | Current Amt | Ytd Amt |
|---|---|---|---|---|
| Federal Income Tax | $0 | 955.00 | 0.00 | 0.00 |
| OASDI | | 955.00 | 59.21 | 59.21 |
| Medicare | | 955.00 | 13.85 | 13.85 |
| California SITW | $0 | 955.00 | 0.00 | 0.00 |
| CA SDI - Employee | | 955.00 | 9.55 | 9.55 |
| | | | **82.61** | **82.61** |

## Payment Summary for Voucher 1170

| | |
|---|---|
| Total Gross Pay | **955.00** |
| Federal Taxes | **-73.06** |
| State and Local Taxes | **-9.55** |
| Other Deductions | **0.00** |
| Net Pay | **872.39** |
| Direct Deposits | **-872.39** |
| Net Check | **0.00** |

## Additional Information

## Direct Deposits

| Bank | Account | Current Amt |
|---|---|---|
| J.P. Morgan Chase Bank. | Ends with *** | 872.39 |
| | | 872.39 |

**Time Off Balances**



Barrett Business Services, Inc. - L.S. TRUCKING INC.                    Voucher #: 002223   Sort Order: 15

| Employee Information | Check Date | Soc-Sec-Num | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|---|
| Tyrone Williams - (R93268) | 04-19-2019 | XXX-XX▇ | 03-31-2019 | 04-13-2019 | 0013031690 |

Federal Tax- Status S Allowances 3                                    State Tax- Status S  Allowances 3

| Charge Date | Description | CURRENT EARNINGS DETAIL Rate Hours/ Units | | Amount | DEDUCTIONS / TAXES Description | Amount | Y-T-D |
|---|---|---|---|---|---|---|---|
| 04-13-2019 | OVERTIME | 34.5000 | 9.00 | 310.50 | FEDERAL TAX | 129.37 | 347.32 |
| 04-13-2019 | REGULAR PAY | 23.0000 | 63.50 | 1460.50 | MEDICARE | 25.68 | 114.81 |
| | | | | | SOC SECURITY | 109.80 | 490.90 |
| | | | | | CA INCOME TAX | 42.93 | 83.34 |
| | | | | | CA DISABILITY | 17.71 | 79.18 |



| Totals: | 72.50 | 1771.00 | 72.50 |
|---|---|---|---|

| Type | DIRECT DEPOSIT Account | Amount | Net Pay |
|---|---|---|---|
| CHECKING | ▇ | 1445.51 | 1445.51 |

Net Pay YTD

6802.20

| Totals: | 1445.51 | | Totals: | 325.49 | 1115.59 |
|---|---|---|---|---|---|

| Y-T-D EARNINGS Description | Amount | PAID TIME OFF Description | Balance | EMPLOYER CONTRIBUTIONS Description | Amount | Y-T-D |
|---|---|---|---|---|---|---|
| REGULAR PAY | 6442.30 | | | | | |
| OVERTIME | 1107.45 | | | | | |
| HOLIDAY | 368.00 | | | | | |

| Totals: | 7917.75 | | Totals: | 0.00 | 0.00 |
|---|---|---|---|---|---|

Review this pay stub to ensure its accuracy. Notify your employer of any errors, or changes to name, address, or tax withholding options.

** L.S. TRUCKING INC. 1774 W WINTON AVE. HAYWARD CA 94545 **

mvQuery Version: HRPyramid_CHECK_PRINT_BBSI



L.S. TRUCKING INC.
D.B.A -
1774 W WINTON AVE.
HAYWARD, CA 94545

Barrett Business Services, Inc.
2560 N 1st Street Suite 180
San Jose, CA 95131

0013031690

04-19-2019

AMOUNT

** VOID **

Pay: Non-negotiable

To The
Order Of:   Tyrone Williams



# Earnings Statement

Co | Bus Unit | Loc | Dept
A | 407

Waste Management
Attn: WMSC Payroll Dept.
1001 Fannin Street
Suite 4000
Houston, TX 77002



| | |
|---|---|
| Pay Period: | 05/06/2019 - 05/12/2019 |
| Advice Date: | 05/17/2019 |
| Advice Number: | 000000043476466 |
| Company: | WM of Alameda County, Inc. |
| Paygroup: | A2A |

0011828    NX              9071         -C02-I  -P01793

Employee ID: 298033
Employee Type: Nonexempt
Taxable Marital Status: S
Social Security Number: XXX-XX-
Exemptions/Allowances
Federal: 00
CA State: 00

TYRONE WILLIAMS
122 Worthing
Hercules, CA 94547

9071-02-0011828-0001-0011958

| Earnings | Rate | Hours | This Period | Year-to-Date |
|---|---|---|---|---|
| Guar Hrly | 28.3700 | 9.08 | 257.60 | 301.57 |
| OT 1 1/2 | 42.5550 | 3.17 | 134.90 | 768.97 |
| Reg Earns | 28.3700 | 26.58 | 754.07 | 2,979.70 |
| Gross Pay | | 38.83 | 1,146.57 | 4,050.24 |

| Tax Deductions | | This Period | Year-to-Date |
|---|---|---|---|
| Fed Withholding | | 156.52 | 603.89 |
| Fed MED/EE | | 16.63 | 58.73 |
| Fed OASDI/EE | | 71.08 | 251.11 |
| CA Withholding | | 50.77 | 214.29 |
| CA SDI FTDI | | 11.46 | 40.50 |
| Total Tax Deductions | | 306.46 | 1,168.52 |
| Net Pay | | 840.11 | 2,881.72 |

Message:



THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING IN THE ENDORSEMENT SIGNATURE LINE.



Waste Management
Attn: WMSC Payroll Dept.
1001 Fannin Street
Suite 4000
Houston, TX 77002

| | |
|---|---|
| Company Code: | WAL |
| Advice Number: | 000000043476466 |
| Advice Date: | 05/17/2019 |

**THIS IS NOT A CHECK**

Deposited to the account of
TYRONE WILLIAMS

| | Account Number | Transit | Amount |
|---|---|---|---|
| Checking | XXX | XXXXXXXXX | $840.11 |


Security
Features
Details on
Back

## NON-NEGOTIABLE
AUTHORIZED SIGNATURE



*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT H

**Secretary of State**
**Articles of Incorporation of a**
**General Stock Corporation**

ARTS-GS

4151304

**FILED** imc
Secretary of State
State of California

MAY 09 2018

This Space For Office Use Only

**IMPORTANT — Read Instructions before completing this form.**

Filing Fee  –  $100.00

Copy Fees  –  First page $1.00; each attachment page $0.50;
Certification Fee - $5.00

*Note:* Corporations may have to pay minimum $800 tax to the California Franchise Tax Board each year. For more information, go to *https://www.ftb.ca.gov.*

---

**1.  Corporate Name** (Go to www.sos.ca.gov/business/be/name-availability for general corporate name requirements and restrictions.)

The name of the corporation is  Best Way Transportation Inc.

---

**2.  Business Addresses** (Enter the complete business addresses.)

| a. Initial Street Address of Corporation - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1474 University Ave Ste 150 | Berkeley | CA | 94702 |
| c. Initial Mailing Address of Corporation, if different than Item 2a | City (no abbreviations) | State | Zip Code |
| | | | |

---

**3.  Service of Process** (Must provide either Individual OR Corporation.)

INDIVIDUAL – Complete Items 3a and 3b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| c. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | | State CA | Zip Code |

CORPORATION – Complete Item 3c.  Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b |
|---|
| Sage International, Inc. |

---

**4.  Shares** (Enter the **number of shares** the corporation is authorized to issue.  Do not leave blank or enter zero (0).)

This corporation is authorized to issue only one class of shares of stock.
The total number of shares which this corporation is authorized to issue is _____  25000

---

**5.  Purpose Statement** (Do not alter the Purpose Statement.)

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

---

**6.  Read and Sign Below** (This form must be signed by each incorporator.  See instructions for signature requirements.)

Signature

Danielle Henriksen
Type or Print Name

ARTS-GS (REV 04/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT I

To the Honorable Judge Illston,

Hello your honor my name is Tyrone Williams I am writing this letter in hopes of receiving an early termination of my probation. I received a 4 year probation sentence which I have completed shy of 3yrs without incident. I know having a clean track record alone doesn't qualify for a reduction of my probation but I've also been a model candidate. Since being released from the Bureau of Prisons August 7th 2017 I've done everything possible to evolve, I can honestly say I don't think or conduct my self in a manner detrimental to my freedom. A major shift in my thinking patterns come from the Residential Drug Program (RDAP) I took while in prison. I credit RDAP because I had to look and my self as person and understand that no matter how much good I thought I did I wasn't a good person. There is no such thing as a victimless crime. Once I accepted who I was as a person I stared to plan for my future goals, goal number one complete RDAP and get out of prison. When I was released to the half way house my plan was to attend the Academy of Trucking get my Commercial Driver's license and form a trucking company with my fiancée Annesha Broom. In the process I worked two Jobs and spent as much time possible rebuilding the relationships with my son and fiancée. I joined Berkeley Mount Zion church something I never did in the past I never felt church was for me and I still think the production of church isn't. But I find joy in the men's meeting. Those meetings are where I feel the most comfortable and helpful. Throughout my life I've had all kinds of experiences and sharing them in hopes to prevent people from seeking the immediate gratification that destroys lives humbling experience.  I graduated from Iowa Wesleyan College with a degree in phycology I've always gotten fulfillment in mentorship so now I mentor young and old men with Pastor Brian Hunter and I volunteer with the Oakland Rebels Basketball league in Oakland.

In 2018 along with my fiancée I formed a trucking company Best Way Transportation Inc. we've been in business for 2 years and it's a lot of work that goes into running a business. As a team we are pushing through the

obstacles and learning as we go. Neither Annesha nor I had any experience with trucking or business management, so it's defiantly been a challenge.

Best Way transportation is now contracting with 3 different companies Hvwy8 trucking, Dp Trucking and Monroe Brooks Trucking so in the past 2 years we've done a good job of building our network. Looking to expand into different forms of trucking.

I now have another addition to my family I welcomed a new baby girl Kacyn Williams to the family October 2019. Something that I lacked in the past was consistence, so being a constant parent and partner in the lives of my family is extremely important, and building something that gives my children a different perspective of their father is valuable. Passing down tangible real world experience is priceless. I'm motivated to stay the course I'm exited to see what structure and stability a two-parent household builds in the character of my children. Growth and evolution is the most important thing in changing your behavior. I have gained real prospective since the BOP I have evolved into a person with a moral responsibility to function in society with INTEGRITY. I've put all the negative marks from my past behind me the only thing left is probation please grant me the opportunity to restore my life completely and continue to build positively for my future.

I would like to thank the courts for the consideration of my request and I'll do everything in my power to continue the positive change I've made, be role model to my children and build up my community for the next generation.

Thank you,

Jyrine Williams

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT J



BOARD

**Melvin Landry**
President/Founder

**Larry McMullen**
Vice President

**Briana Fisher**
Sergeant At Arms

**Nicole Nelson**
Treasurer

**Ria Cotton**
Secretary

**Cathryn Cornelius**
Director of Public Affairs &
Marketing

CONTACT

P.O. Box 22240
Oakland, CA 94612
(510) 773-8083

We are a 501c3
organization

**Tax ID# 36-4751874**

March 17th, 2020

RE: Tyrone Williams

Dear Judge Illston

Founded in 1987, the Oakland Rebels Youth Basketball Club is a non-profit organization created to help youth develop not only their basketball skills, but also the academic and social skills needed to help them reach their full potential.  Since the start of our organization, we have grown largely in terms of the number of players and families we serve. Because of this growth, we have had to do more outreach to find the best of the best in volunteers who care about strengthening our community and know how to connect well with our youth. Volunteer members like Tyrone Williams are the core of our program's mission and success as they demonstrate what dedication and hard work can help us achieve.

Tyrone is an exemplary gentleman who has made many great contributions to the Oakland Rebels. Tyrone strives to enrich his community on a daily basis as he frequently devotes his spare time to help our young thrive. Always finding ways to advocate for youth, constantly encouraging players to work hard, and always remaining optimistic even in the face of a challenge is what makes Tyrone unique. Most of all, Tyrone has helped the rest of our volunteers create a culture that says being a leader off the court and in the classroom matters more than being a leader on the court. Tyrone has been influential in organizing mentorship programs and most importantly advocating and supporting the success of the youth in the community. Naturally connecting with other volunteers. Tyrone is someone who you can rely on to be consistent, committed and responsible. He built trust easily with other volunteers and youth me because of his honesty. Tyrone has taken the responsibility of assisting during practices and helping us reach our fundraising goals, which enables our players to travel to tournaments around the country. With his grit, passion, and great business acumen, Tyrone has the potential to be a very successful gentleman who will make a great impact in the community and young kid's lives.

Tyrone has been a volunteer with the Oakland Rebels since March 5th, 2018 and he volunteers on average 6 to 15 hours a week for practice and games.

Please feel free to contact me should you have any questions, comments, or concerns.

Regards,

Melvin Landry Founder/Commissioner
at oaklandrebelsbasketball@gmail.com
510-773-8083

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT K



COMMITTEE ON CRIMINAL LAW
of the
JUDICIAL CONFERENCE OF THE UNITED STATES
Gerald R. Ford Federal Building
110 Michigan Street, N.W., Room 602
Grand Rapids, MI 49503

Honorable Paul J. Barbadoro
Honorable Raymond W. Gruender
Honorable Judith C. Herrera
Honorable Ellen Segal Huvelle
Honorable Sterling Johnson, Jr.
Honorable Cindy K. Jorgenson

Honorable Irene M. Kelley
Honorable Theodore A. McKee
Honorable Franklin L. Noel
Honorable Charles R. Norgle, Sr.
Honorable Margaret Casey Rodgers
Honorable Keith Starrett
**Honorable Robert Holmes Bell**, Chair

TELEPHONE
616- 456 -2021

FACSIMILE
6 1 6 - 4 5 6 - 2 5 3 8

February 16, 2012

MEMORANDUM

To:         Judges, United States District Courts
            United States Magistrate Judges

From:       Honorable Robert Holmes Bell
            Chair, Judicial Conference Committee on Criminal Law

RE:         COST-CONTAINMENT STRATEGIES RELATED TO PROBATION AND
            PRETRIAL SERVICES OFFICES  **(IMPORTANT INFORMATION)**

        I write to you as Chair of the Judicial Conference Committee on Criminal Law.  Given the
budget constraints under which the probation and pretrial services program are operating, it is
imperative that we align our resources effectively to address those cases that are more complex and
pose the greatest risks to community safety, while reducing expenditures in less complex and lower
risk cases when it is prudent to do so. We ask your assistance in this effort by ordering reduced
scope investigations and supervision services in appropriate cases.  The attached document provides
specific information on reduced services options and the costs associated with them.  We encourage
you to discuss the document with your colleagues and chief probation and pretrial officers.

        If you have any questions or suggestions for the Criminal Law Committee, please contact
John Fitzgerald, Chief of the Criminal Law and Policy Staff, at John_Fitzgerald@ao.uscourts.gov
or (202) 502-1625.

Attachment

cc:      Chief Probation Officers
         Chief Pretrial Services Officers

## Presentence Investigation Reports

**Background**: Rule 32(c) states that "[t]he probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless . . . the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its findings on the record." The rule also states, however, that "[i]f the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."

**Cost Savings Options**: Full guideline presentence reports currently cost approximately $1,546 per report. Below are examples of options that require fewer resources, and can help expedite sentencing in certain cases.

1.  Waiver of the Presentence Report – When the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and when a presentence report is not otherwise required, the court may waive the presentence report. If the presentence report is waived, and the defendant has at least nine months remaining on an imprisonment sentence, the probation office will prepare a Supplemental Report to the Bureau of Prisons (BOP). This abbreviated report assists the BOP in designation and classification determinations. These reports cost approximately $744 per report.

2.  Modified Presentence Report – In any case, the court may order the probation officer to prepare a modified presentence investigation report. These reports are designed to give the court flexibility in ordering shorter reports in appropriate cases. For example, these reports could be used in a case involving a single defendant, convicted on a single count of conviction where the defendant has no or few ties to the United States and is not exposed to a lengthy term of imprisonment or supervision (e.g., class A misdemeanors, class E felonies, cases in which the plea agreements contemplate a brief period of imprisonment or no prison at all, deportable aliens). Modified presentence investigation reports may not be suitable if the defendant has a history of violence or sexual offenses, significant ties to the country, identified risks and needs (e.g., current substance abuse or mental health issues), or significant assets, since these issues tend to have greater influence on the sentence imposed, Bureau of Prisons designation and programming, and post-conviction supervision. These reports cost approximately $744 per report.

3.  Expedited Sentencing Report – Sometimes referred to as "worksheets," these reports may be ordered when the court waives the preparation of a presentence report and only requires that the probation office calculate the offense level and criminal history score needed to determine the guideline range. These reports do not include a narrative description of the offense or the defendant's personal history. These reports cost approximately $335 per report.

## Early Termination of Supervision

**Background**: Under 18 U.S.C. §§ 3564(c) and 3583(e)(1), the court may terminate terms of probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of an offender and is in the interest of justice.

**Cost Savings Options**: The average annual cost of supervision in fiscal year 2010 was approximately $3,938 per case.[1]  Terminating appropriate cases before they reach their full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism.  The general criteria for officers in assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:

1.  Stable community reintegration (e.g., residence, family, employment);

2.  Progressive strides toward supervision objectives and in compliance with all conditions of supervision (the existence of an outstanding financial penalty *per se* does not adversely affect early termination eligibility as long as the offender has been paying in accordance with the payment plan);

3.  No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

4.  No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

5.  No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;

6.  No recent evidence of alcohol or drug abuse;

7.  No recent psychiatric episodes;

8.  No identifiable risk to the safety of any identifiable victim; and

9.  No identifiable risk to public safety reflected in the risk assessment.

AO staff examined whether offenders whose supervision was terminated early (ET) had different recidivism rates than similar offenders who were terminated at the full completion of their supervision term (FT).  Results indicated that ET cases were arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often.  From a policy standpoint, it appears that the above criteria, when properly applied, does not jeopardize public safety.

---

[1]By comparison, the average annual cost of imprisonment in fiscal year 2010 was $28,284 per inmate.

## Location Monitoring Conditions

**Background**:  Under 18 U.S.C. § 3142(c)(1)(B), the court is authorized to order participation in the location monitoring program as a condition of pretrial release.  The statute also requires the court to impose electronic monitoring as a condition of pretrial release in any case that involves a minor victim of certain sex offenses.  Under 18 U.S.C. § 3563(b)(19), the court is authorized to impose a condition requiring that the probationer remain at his place of residence during non-working hours and, if the court finds it appropriate, that compliance with this condition be monitored by telephonic or electronic signaling devices (including global positioning systems (GPS)).  The statute specifies that the home detention and home incarceration components of the program will be used only as an alternative to incarceration.  This provision also applies to supervised release per 18 U.S.C. § 3583(d).

**Cost Savings Options**:  The court can choose from several location monitoring technologies.  Each technology offers distinct advantages, and each carries its own costs (consisting of equipment rental, monitoring time, and labor).  Below are several examples of location monitoring technologies.

1. Voice Verification System – Telephones and automated systems verify a person's presence without traditional electronic monitoring equipment (i.e., no transmitter, receivers, tether) and serves as a cost-effective solution for monitoring compliance.  The average daily cost for this technology in fiscal year 2011 was $1.60.

2. Radio Frequency (RF) Technology – A person's presence is verified at a location using a transmitter and receiver; 24-hour electronic surveillance designed to alert an officer when a participant leaves a location, returns home late from a pre-approved schedule, or tampers with the equipment.  RF only monitors when the transmitter is in range of the receiver, and violations cannot be detected when the participant is out of range.  The average daily cost for this technology in fiscal year 2011 was $3.50.

3. Passive GPS – Uses satellite tracking to record a participant's location from the time of departure from the residence until return. While home, the GPS monitor downloads the tracking information to the vendor's management system, which plots it into a mapping system for case management purposes.  GPS is useful when there is no third party risk and real-time alerts are not needed.  The average daily cost for this technology in fiscal year 2011 was approximately $6.00.

4. Active GPS – Allows continuous monitoring of a person's movements through an active tracking device, which may contain a GPS receiver, a cellular modem, a radio frequency receiver/dialer, or motion sensor.  Appropriate for higher risk cases where an officer's immediate notification of an alert would be sought.  The average daily cost for this technology in fiscal year 2011 was approximately $8.00.

5. Hybrid GPS – Allows monitoring of a person's movements through a combination of passive, active and RF technology.  Officers may choose to utilize "hybrid location monitoring devices" because it offers multiple location monitoring technologies that can increase tracking accuracy in the community through the use of GPS while also better ensuring compliance to a curfew in their home through the use of Radio Frequency (RF)

technology.  The average daily cost for this technology in fiscal year 2011 was approximately $7.00.

In addition to the cost of the technology, LM cases place greater requirements on staff, and therefore require the expenditure of greater salary resources.  The table below reflects the average, per case salary costs for officers supervising LM cases (based on the national average salary for officers):

| | No LM Condition | Voice Verification | Radio Frequency | GPS |
|---|---|---|---|---|
| Pretrial Services | $1,211 | $1,298 | $1,492 | $1637 |
| Probation | $1,311 | $1,442 | $1,705 | $1,901 |

Judges are encouraged to consider the costs of the technology and staff time when imposing location monitoring conditions.

**Imposition and Modification of Special Conditions (Including Treatment)**

**Background**: One of the most well established evidence-based principles is that supervision interventions should be targeted based on the specific risk levels in each case. Often referred to as the "risk principle," this theory recognizes it is imprudent to take a one-size-fits-all approach to supervision and treatment. Resources should be delivered to defendants and offenders at higher risk of noncompliance or recidivism, which is generally measured by actuarial risk assessment instruments.[2] It is through intervention in higher risk cases that courts and officers efficiently further the goal of public safety during the period of supervision and beyond.

**Cost Savings Options**: Since 2005 the cost of providing treatment services (substance abuse, mental health, and sex offender) to defendants and offenders under federal supervision has risen by nearly 60 percent. Typically, these services are provided by vendors in the community under agreements with the local probation and pretrial services offices and paid from decentralized judiciary funds. In fiscal year 2010, for example, a total of $109,958,412 was spent on these services at an average cost of $1,251 per client.

The tables below summarize data reported by probation and pretrial services offices for fiscal year 2010. The costs shown in the table represent average expenditures per client for some of the most common types of treatment used to satisfy a special condition for substance abuse, mental health, or sex offender treatment.

| Substance Abuse Treatment | Average Spending Per Client |
|---|---|
| Individual Counseling | $ 497 |
| Group Counseling[3] | $ 707 |
| Manualized Cognitive Behavioral Group[4] | $ 779 |
| Short-term Residential | $ 4,025 |
| Long-term Residential | $ 7,572 |

---

[2]Risk assessment instruments are highly structured assessment instruments where the individual items are assigned numerical weights, combined in some mechanical way, and the scores are related to criminal behavior. The primary instruments used by the federal pretrial services and probation system are the Pretrial Services Risk Assessment, the Risk Prediction Index, and the Post Conviction Risk Assessment.

[3]While the average spent per client on group counseling is more than the average spent on individual counseling, it should be noted that group counseling sessions generally occur with greater frequency and over a longer period of time.

[4]Research shows that cognitive behavioral group treatment is among the most successful interventions with substance-dependent offenders. (Note: D.B. Wilson, L.A. Bouffard, and D.L. McKenzie, "A Quantitative Review of Structured Group-Oriented Cognitive-Behavioral Programs for Offenders," Criminal Justice and Behavior, Vol. 32, No. 2, pp. 172-204, 2005.) When and where available, this should be the default choice of treatment for substance-dependent offenders. *See also, Guide to Judiciary Policy*, Volume 8, Part E, Chapter 5, §550.20.60(b).

| Mental Health Treatment | Average Spending Per Client |
|---|---|
| Individual Counseling | $ 1,040 |
| Group Counseling | $ 675 |
| Cognitive Behavioral Group | $ 590 |

| Sex Offender Treatment | Average Spending Per Client |
|---|---|
| Individual (pretrial) | $ 842 |
| Individual (post conviction) | $ 1,410 |
| Group (pretrial) | $ 1,210 |
| Group (post conviction) | $ 1,623 |
| Physiological Measures (Plethysmograph, Polygraph, VRT) | $ 383 |

7

## Imposition and Length of Supervised Release

**Background**:  Application Note 1 of the Commentary to USSG §5D1.1 says that the "court may depart from this guideline and not impose a term of supervised release if supervised release is not required by statute and the court determines, after considering the factors set forth in [18 U.S.C. § 3583(c), the defendant's criminal history, and any substance abuse history], that supervised release is not necessary."

**Cost Savings Options:**  If supervision is not required by statute or the guidelines, the court should assess whether a term of supervision is necessary. To assist the court in making this determination, officers should consider the risks the defendant poses to community safety and whether supervision can effectively reduce those risks. Among the factors that the court can consider in deciding not to impose supervision are:

1.   Stability in the community, home, and employment;
2.   Compliance with the terms and conditions of any pretrial services supervision;
3.   No aggravating role in the offense of conviction, particularly in large drug or fraud cases;
4.   No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);
5.   No recent arrests (other than the count of conviction) and no pending charges;
6.   No recent evidence of alcohol or drug abuse;
7.   No recent psychiatric episodes;
8.   No identifiable risk to the safety of any identifiable victim; and
9.   No identifiable risk to public safety based on the results of any risk assessment.

The above list is not exhaustive, but it is designed to assist the court in assessing the need for any period of supervision. Also, the presence of a single factor, by itself, may not sufficiently justify a recommendation for supervision. For example, the fact that restitution is due or that a fine is recommended may not by itself mean that a term of supervision is necessary.

Supervision should not be imposed if the only offense of conviction is an infraction. Similarly, using the above criteria, the court should scrutinize whether it is appropriate to place on supervision a defendant whose only offense of conviction is a class B or C misdemeanor.

In ordering a term of supervision, the court should consider a term that is "sufficient, but not greater than necessary" to satisfy the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) and recognizes the distinctions between a sentence of probation (which includes a punitive component) and a term of supervised release (which is not intended to punish the defendant).

It should be noted that, the guidelines manual effective on November 1, 2011, suggests that the court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT L

(1)     under continuous supervision for more than 18 months and in full compliance with all conditions throughout the supervision term or

(2)     under continuous supervision for more than 30 months and in full compliance with all conditions throughout the last year.

Exceptions to this rule would be career violent and/or drug offenders as described in 28 U.S.C. § 994(h) and offenders convicted of a sex offense or terrorism predicate as described in 18 U.S.C. § 3583 (j) or (k) for which life terms of supervised release are authorized.

## § 380 The Transition Off Supervision

The transition out of the criminal justice system is a process, not an event. It is the culmination of a series of transitions that began when the offender was first arrested for the crime and is one of the most critical for achieving long-term public safety beyond the term of supervision. Transition off supervision is implemented throughout the supervision period by providing offenders with the tools — and connecting them to the social services — they require to function under decreasing levels of control.

## § 380.10 Early Termination

(a)     Under 18 U.S.C. §§ 3564(c) and 3583(e)(1), the court may terminate terms of probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of an offender and is in the interest of justice.  (**Note:**  Early termination of parole cases is governed by the *U.S. Parole Commission Rules and Procedures Manual*, Nov. 2007, Section 2.43.)

(b)     Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. The general criteria for assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:

(1)     Stable community reintegration (e.g., residence, family, employment);

(2)     Progressive strides toward supervision objectives and in compliance with all conditions of supervision;

(3)     No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

(4)     No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

(5)     No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;

(6)     No recent evidence of alcohol or drug abuse;

(7)     No recent psychiatric episodes;

(8)     No identifiable risk to the safety of any identifiable victim; and

(9)     No identifiable risk to public safety based on the Risk Prediction Index.

(c)     The existence of an outstanding financial penalty *per se* does not adversely affect early termination eligibility as long as the offender has been paying in accordance with the payment plan.

(d)     During the first 18 months of supervision, the appropriateness of early termination should be based on the offender's overall progress in meeting supervision objectives and should include an evaluation of all the circumstances in the individual case. Offenders with identified risks to community safety should not be recommended for early termination. However, the failure to meet other criteria listed should not automatically exclude an offender from further consideration.

(e)     At subsequent assessments, there is a presumption in favor of recommending early termination for probationers and supervised releasees:

(1)     Who have been under supervision for at least 18 months and

(a)     are not career violent and/or drug offenders (as described in 28 U.S.C. § 994(h)), sex offenders, or terrorists,

(B)     present no identified risk to the public or victims, and

(C)     are free from any moderate (**see:** Guide, Vol 8E, § 620.40.20) or high (**see:** § 620.40.30) severity violations; and

(2)     Who have been under supervision for at least 42 months and

(a)    are not career violent and/or drug offenders (as described in 28 U.S.C. § 994(h)), sex offenders, or terrorists, and

(B)    are free from any moderate (**see:** Guide, Vol 8E, § 620.40.20) or high (**see:** § 620.40.30) severity violations.

(f)    Early termination assessments should be discussed with the supervisor as part of the periodic evaluation process. A request to the court for early termination consideration should include a summary of the offender's adjustment under supervision, along with justification for a request for early termination supported by the chronological record. The request should also include options for the court to revisit the offender's early termination at a later time.

(g)    Should the court order the termination of an offender's supervision, the case should be statistically closed immediately. Otherwise, until the next case evaluation, the case should ordinarily be supervised under low intensity supervision standards (**see:** Guide, Vol 8E, § 440).

## § 380.20 Case Closing Activities

(a)    For cases under active supervision, officers are to undertake the following case closing activities during the last six months of the supervision term.

(1)    *For offenders who continue to present current risks and needs* (as documented on the last case plan), interview the offender and his or her family or significant others to discuss future plans, particularly as they relate to the need for ongoing services to address risks and needs; and refer the offender to appropriate service providers in the community for assistance with substance abuse or mental health counseling and support, medication, housing, and other basic needs.

(2)    *For offenders with outstanding monetary penalties*, notify the Financial Litigation Unit of the U.S. attorney's office of the pending termination of supervision for offenders who will have outstanding fine and restitution balances and provide the unit with all available information on offender resources and ability to pay.

(3)    *For all offenders*,

(a)    Assess whether the offender is subject to any newly enacted or expanded statutory requirements and, if so, implement or

*USA v. Tyrone Williams*

Case No. CR 18–00224 SI

# EXHIBIT M



JAMES C. DUFF
Director

JILL C. SAYENGA
Deputy Director

# ADMINISTRATIVE OFFICE OF THE
# UNITED STATES COURTS

WASHINGTON, D.C. 20544

WILLIAM R. BURCHILL, JR.
Associate Director
and General Counsel

ROBERT K. LOESCHE
Deputy General Counsel

May 12, 2009

Ms. Ellie N. Hayase Asasaki
United States Probation
2-215 Prince Kuhio Federal Building
300 Ala Moana Boulevard
Honolulu, HI 96850-0001

Dear Ms. Asasaki:

I am responding to your inquiry regarding the availability of early termination of supervised release under 18 U.S.C. §3583(e)(1)[1] when an offender had been sentenced to a mandatory minimum term of five years supervised release under 21 U.S.C. 841(b)(1)(A). The concern is that if a term of supervised release is a mandatory minimum sentence, a court is precluded from exercising its early termination authority that traditionally has applied to supervised release terms prescribed by 18 U.S.C. §3583(b).

---

[1]Section 3583(e)(1) states:

(e) Modification of conditions or revocation.--The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--

(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. §3583(e)(1).

Ms. Ellie N. Hayase Asasaki                                             Page 2

The Sixth Circuit is the only circuit court to address this issue.  In *United States v. Spinelle,* 41 F.3d 1056 (6th Cir. 1994), the panel considered whether Congress had altered district courts' discretionary authority under §3583(e)(1) to terminate supervised release after one year of supervision, when it enacted 21 U.S.C. §841(b)(1)(C), which requires imposition of a three-year minimum term of supervised release at sentencing for certain drug offenses.  The *Spinelle* court examined the plain meaning of the two statutes and concluded that Congress clearly intended to differentiate the sentencing phase from the post-sentencing phase.  Prior to amendment of 18 U.S.C. §3583(a) by the Anti-Drug Abuse Act of 1986 ("ADAA"), Pub. L. No. 99-570, 100 Stat. 3207 (codified as amended at 21 U.S.C. §§ 801-971), district courts only had discretionary authority to impose supervision at sentencing for drug offenders.  Under 18 U.S.C. §3583(e)(1), courts also had separate discretionary authority to terminate supervision after one year.  When Congress later amended 18 U.S.C. §3583(a) to require imposition of supervised release if such a term is required by a statute other than §3583(b), which specifies the supervision term for most offenses, it only limited courts' discretionary authority when *imposing* the sentence.  The separate authority to terminate supervision early under 18 U.S.C. §3583(e)(1) remained unaltered regardless of whether the term was prescribed as a mandatory minimum in an ADAA offense or was imposed as required by the default §3583(b).  *Spinelle,* 41 F.3d at 1060; *see also United States v. McClister,* No. 02-CR-87, 2008 WL 153771 (D. Utah Jan. 14, 2008) (same); *United States v. Scott,* 362 F. Supp.2d 982 (N.D. Ill. 2005) (same).

Thus, a district court may terminate supervised release early (after one year) under §3583(e)(1) after giving notice to the government of the proposed modification pursuant to Federal Rule of Criminal Procedure 32.1(c) so it has an opportunity to object.  This is so even if the term of supervised release was imposed as a mandatory minimum term of five years supervised release under 21 U.S.C. 841(b)(1)(A).

A related issue that frequently comes up in this context is whether a court may terminate supervised release prior to its expiration even when the offender has not successfully complied with all of his conditions of supervision.  It is a common misconception that early termination under §3583(e)(1) must be based on an offender's significantly changed circumstances or extraordinarily good performance under supervision.  The offender's conduct while under supervision is only one of many factors that a district judge must consider when exercising her discretion under §3583(e)(1), however.  The district court may, under factors set forth in 18 U.S.C. §3553(a),[2]

---

[2]The relevant §3553(a) factors are:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) deterrence; (3) protection of the public; (4) the need to provide the defendant with educational, vocational training, medical care or other rehabilitation; (5) the sentence and sentencing range established for

Ms. Ellie N. Hayase Asasaki                                                     Page 3

"terminate a term of supervised release . . . at any time after the expiration of one year of
supervised release . . . if it is satisfied that such action is warranted by the conduct of the
defendant released and the interest of justice." *Id.* §3583(e)(1).

Courts have discretion under §3583(e)(1) to discontinue supervision after one year
if *any combination* of the specified factors in §3553(a) and §3583(e) justifies early
termination. Generally, the §3553(a) factors that were first considered at sentencing will
not have changed significantly when a district judge is evaluating early termination of
supervision. For that reason, courts often emphasize the unremarkable "conduct of the
defendant" while under supervision as a basis for denying an offender's motion for early
termination. *See, e.g., United States v. McClain,* No. 99-CR-93, 2009 WL 854107, at *1
(E.D. Wis. Mar. 30, 2009) (early termination rarely warranted; only occasionally justified
for changed circumstances such as exceptionally good behavior); *United States v.
Williams,* No. 02-216, 2006 WL 618849, at *1 (E.D. Pa. Mar. 13, 2006) (same); *United
States v. McKay,* 352 F. Supp.2d 359, 361 (E.D.N.Y. 2005) (same); *United States v.
Guilliatt,* No. 01-408, 2005 WL 589354, at *1 (E.D. Pa. Jan.18, 2005) (same); *United
States v. Caruso,* 241 F. Supp.2d 466, 468-69 (D.N.J. 2003) (same); *United States v.
Paterno,* 99-CR-037, 2002 WL 1065682, at *2 (D.N.J. Apr. 30, 2002) (same).

Section 3583(e)(1) does not require "exceptional conduct" to justify early
termination, however. Instead, a court must simply be satisfied that the termination is
warranted and is in the interest of justice. The Judicial Conference has endorsed nine
criteria for assessing whether an offender who satisfies the minimal statutory factors
should be recommended for early termination:

> (1) stable community reintegration (*e.g.,* residence, family, employment);
> (2) progressive strides toward supervision objectives and in compliance
> [*sic*] with all conditions of supervision; (3) no aggravated role in the offense
> of conviction, particularly large drug or fraud offenses; (4) no history of
> violence . . .; (5) no recent arrests or convictions . . . ; (6) no recent evidence
> of alcohol or drug abuse; (7) no recent psychiatric episodes; (8) no
> identifiable risk to the safety of any identifiable victim; and (9) no
> identifiable risk to public safety.

---

the category of defendant; (6) any pertinent policy statement by the Sentencing
Commission; (7) the need to avoid unwarranted sentence disparities among defendants
with similar records who have been found guilty of similar conduct; and (8) the need to
provide restitution to any victims of the offense. *See* 18 U.S.C. §§3553(a)(1), (a)(2)(B),
(a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

Ms. Ellie N. Hayase Asasaki                                                    Page 4

*See Supervision of Federal Offenders*, Monograph 109, Chapter III-20 to 21, approved for publication by the Judicial Conference in March 2008.  If the offender satisfies the §3583(e)(1) and nonbinding Conference factors, officers may recommend that a district court terminate a supervision term prior to its predicted expiration date.

      I hope this discussion responds to your concerns.  Please contact me if you have any further questions.

                         Sincerely,

                         Joe Gergits
                         Assistant General Counsel